**TRAVEL TRAVEL, KIRKWOOD, INC., Plaintiff/Respondent,**

v.

**JEN N.Y. INC. d/b/a Discount Tickets, Defendant/Appellant.**

**No. ED 87441.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Nov. 21, 2006.

Jane E. Tomich, St. Charles, MO, for appellant.

Max G. Margulis, Chesterfield, MO, Karl W. Dickhaus, St. Louis, MO, for respondent.

LAWRENCE E. MOONEY, Judge.

The defendant, Jen N.Y. Inc. d/b/a Discount Tickets, appeals entry of summary judgment in favor of the plaintiff, Travel Travel Kirkwood, Inc. The Circuit Court of St. Louis County entered judgment against the defendant in the amount of $46,500, plus court costs, for sending the plaintiff 31 unsolicited advertisements via facsimile, in violation of the Telephone Consumer Protection Act of 1991. On ap-peal, the defendant asserts that the plaintiff did not demonstrate its entitlement to judgment as a matter of law because there were genuine disputes whether (1) the plaintiff received 31 faxes from the defendant; and (2) the plaintiff consented to receive faxes from the defendant. However, the defendant utterly failed to rebut the plaintiff's evidence of its receipt of the faxes. Further, there was no genuine dispute as to plaintiff's consent because plaintiff's authorization to release its fax number to members of a travel-industry group was not an "express invitation or permission" to receive unsolicited advertisements, as the governing statute then required. Hence, we affirm the entry of summary judgment against the defendant.

### Facts

The plaintiff, a travel agency, sued the defendant, an airline ticket consolidator, pursuant to the Telephone Consumer Protection Act of 1991 (the Act). The plaintiff alleged that the defendant sent the plaintiff 31 unsolicited advertisements via facsimile between June and December 2003. The 31 facsimiles bore the defendant's business name and logo, contained airfare information, proclaimed the commercial availability and quality of the defendant's services, and urged the plaintiff to sell the defendant's services to the plaintiff's customers.

The Act prohibits the use of any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine. 47 U.S.C.S. Sec. 227(b)(1)(C) (Matthew Bender, LEXIS through 108th Cong., 1st Sess. (2003)).[1] The plaintiff moved for and the

1. Except as otherwise noted, all U.S. Code references are to 47 U.S.C.S. Sec. 227 (Matthew Bender, LEXIS through 108th Cong., 1st Sess. (2003)), the version of the statute in effect in 2003 when the plaintiff received the faxes at issue. 47 U.S.C.S. Sec. 227 was amended by the Junk Fax Prevention Act of 2005, Pub.L. No. 109–21, sec. 2, 119 Stat. 359.

trial court entered summary judgment against the defendant. Pursuant to the Act, the court awarded the plaintiff damages in the amount of $500 for each of the 31 facsimile advertisements and then tripled the damages for the defendant's willful and knowing violation of the Act, for a total award of $46,500 plus court costs.[2] Further, the court permanently enjoined the defendant from sending unsolicited advertisements via facsimile or engaging in any acts proscribed by the Act. Finally, the court later entered a default judgment of $46,500, plus court costs, on the defendant's third-party claim against its marketing firm, Impact Marketing Solutions, LLC.[3]

### Discussion

Summary judgment allows a trial court to enter judgment for the moving party where the party has demonstrated a right to judgment as a matter of law based on facts about which there is no genuine dispute. *Harjoe v. Herz Fin.*, 108 S.W.3d 653, 654 (Mo. banc 2003) (per curiam); *ITT Commercial Fin. Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 377 (Mo. banc 1993). The key to summary judgment is the party's undisputed right to judgment as a matter of law; it is not simply the absence of a fact question. *Harjoe*, 108 S.W.3d at 654; *ITT Commercial*, 854 S.W.2d at 381. When a movant makes a *prima facie* showing that no genuine issues of material fact exist and that the movant is entitled to judgment as a matter of law, the non-movant must make specific references to the discovery, exhib-

its, or affidavits that demonstrate specific facts showing a genuine issue for trial. Rule 74.04(c)(2); *ITT Commercial*, 854 S.W.2d at 381. Once a movant has established a right to judgment as a matter of law, the non-movant's only recourse is to show—via affidavit, depositions, interrogatory answers, or admissions—that at least one material fact is genuinely disputed. *ITT Commercial*, 854 S.W.2d at 381. If the non-movant cannot contradict the showing made by the moving party, judgment is properly entered against the non-movant because the moving party has already established a right to judgment as a matter of law. *Id.*

When considering an appeal from summary judgment, we review the record in the light most favorable to the party against whom judgment was entered, and we afford the benefit of all reasonable inferences to the non-movant. *Harjoe*, 108 S.W.3d at 654; *ITT Commercial*, 854 S.W.2d at 376. Our review is de novo. *Harjoe*, 108 S.W.3d at 654; *ITT Commercial*, 854 S.W.2d at 376.

The Telephone Consumer Protection Act prohibits the use of any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine. 47 U.S.C.S. Sec. 227(b)(1)(C); *Harjoe*, 108 S.W.3d at 656. An "unsolicited advertisement" means "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." 47 U.S.C.S. Sec. 227(a)(4);[4] *Harjoe*, 108

---

2. With the plaintiff's consent, the trial court ordered the damage award reduced to $15,500, plus court costs, if paid within ninety days of the date of judgment.

3. Impact Marketing Solutions, LLC is not a party to this appeal.

4. The Junk Fax Prevention Act of 2005 renumbered paragraphs (2) through (4) of 47 U.S.C.S. Sec. 227(a) as paragraphs (3) through (5), respectively. The current version of Sec. 227(a)(4) is found at 47 U.S.C.S. Sec. 227(a)(5) (Matthew Bender, LEXIS through Pub.L. No. 109–220).

S.W.3d at 656. In order to establish a right to judgment as a matter of law, the plaintiff was required to establish that the defendant used a telephone facsimile machine or other device to send an unsolicited advertisement to the plaintiff's facsimile machine. 47 U.S.C.S. Sec. 227(b)(1)(C). The plaintiff was also required to demonstrate the absence of any genuine issue of material fact. *ITT Commercial,* 854 S.W.2d at 377. Once the plaintiff had met its burden, the defendant was required to demonstrate the existence of a genuine dispute by supplementing the record with competent materials to ᵢ contradict the plaintiff's version of the essential facts. *Id.* at 382.

## Point I

█ In its first point, the defendant asserts that the plaintiff failed to present undisputed facts demonstrating it had actually received 22 of the 31 faxes. The defendant argues that six of the 22 disputed faxes contain no destination fax number or name to identify the recipient. The defendant contends the other sixteen of the 22 disputed faxes show the recipient's fax number, but that the plaintiff did not present any evidence of the period the plaintiff was assigned those fax numbers or the dates the sixteen faxes were sent. The plaintiff counters that the defendant failed to make any factual showing to dispute the plaintiff's receipt of all 31 faxes and that the defendant relies solely on speculation in its effort to claim existence of a genuine issue of material fact.

The defendant's argument is utterly meritless. In its motion for summary judgment and its supporting record, the plaintiff asserted that it received 31 facsimiles at facsimile machines it owned, which were located in Missouri and assigned specific telephone numbers. The plaintiff supported its assertions via affida-

vit. The plaintiff also attached copies of the 31 facsimiles, which bore the defendant's business name and logo, contained airfare information and statements as to the commercial availability and quality of the defendant's services, and urged the plaintiff to sell the defendant's services to the plaintiff's customers. In response, the defendant admitted that it had "no personal knowledge or information sufficient to rebut or contradict [the plaintiff's] averments," and therefore, "for purposes of Rule 74.04(2)(sic) accepts the truth of the matters asserted." On appeal, the defendant now claims that whether the plaintiff received all 31 faxes constitutes a genuine issue of material fact. We disagree.

█ Once a movant establishes a right to judgment as a matter of law, the non-movant's only recourse is to show—via affidavit, depositions, interrogatory answers, or admissions on file—that at least one material fact is genuinely disputed. *Id.* at 381. The plaintiff plainly stated it had received 31 faxes and supported this assertion via affidavits and exhibits. The defendant admitted the plaintiff's assertions and offered no contradictory information. Not only did the defendant fail to create a genuine issue of material fact, but it admitted the facts that it now claims are in dispute. Point denied.

## Point II

█ In its second point, the defendant claims that the plaintiff failed to present undisputed facts that it did not consent to receive faxes from the defendant. The defendant argues that, as a member of the International Airlines Travel Agent Network (IATAN), the plaintiff had consented to release of its contact information to other IATAN members, including the defendant. The defendant argues that, through its IATAN membership and execution of IATAN membership forms, the

plaintiff consented to receive facsimiles from IATAN members wishing to use the plaintiff's services. The plaintiff counters that the Act requires "express permission or invitation" from the recipient before a party may fax an advertisement, that the plaintiff did not give such permission, and that IATAN membership provided no such permission. The plaintiff further contends that whether its IATAN membership constituted express consent is a disputed issue of law, not a disputed issue of fact.

The parties agree on the underlying facts as to this point. Both the plaintiff and the defendant are members of the travel-industry group IATAN. The plaintiff included its name and contact information, including its telephone facsimile number, in IATAN's member directory and database. The plaintiff also executed IATAN membership forms, which stated, "The applicant authorizes the International Airlines Travel Agent Network to release the information contained herein to any industry supplier that may wish to use the applicant's services."[5] The defendant thus claims a question of fact existed as to whether the plaintiff had given express consent to receive facsimiles from the defendant. We disagree with the defendant's analysis. Whether the plaintiff's IATAN membership constituted prior express invitation or permission, pursuant to the Act, for the defendant to send facsimiles to the plaintiff is a question of law. There is no genuine dispute of material fact involving consent. Indeed, the record here is agreed upon. Rather, the dispute is to the legal effect of the plaintiff's IATAN membership. And, because we find no ambiguity in the terms of the plaintiff's IATAN membership, the issue is purely one of law.

The Act prohibits sending an unsolicited advertisement to a telephone facsimile machine.[6] 47 U.S.C.S. Sec. 227(b)(1)(C). The

---

**5.** The defendant contends that the "the applicant's services" includes the plaintiff's sale of defendant's travel services to the plaintiff's customers. We need not reach this contention.

**6.** Certain exceptions to this general prohibition were added in 2005. Junk Fax Prevention Act of 2005, Pub.L. No. 109–21, sec. 2, Sec. 227(b)(1)(C), 119 Stat. 359. Those exceptions did not exist at the time of the events in this case, and so are not applicable here. The current version of the Telephone Consumer Protection Act states in pertinent part:

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

. . .

(C) to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement, unless-

(i) the unsolicited advertisement is from a sender with an established business relationship with the recipient;

(ii) the sender obtained the number of the telephone facsimile machine through—

(I) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or

(II) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution,

except that this clause shall not apply in the case of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before July 9, 2005, if the sender possessed the facsimile machine number of the recipient before such date of enactment; and

(iii) the unsolicited advertisement contains a notice meeting the requirements under paragraph (2)(D),

except that the exception under clauses (i) and (ii) shall not apply with respect to an unsolicited advertisement sent to a telephone facsimile machine by a sender to whom a request has been made not to send future unsolicited advertisements to such telephone facsimile machine that

Act defines "unsolicited advertisement" as "any material advertising the commercial availability of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." 47 U.S.C.S. Sec. 227(a)(4). The defendant claims that consent need not be personal or exchanged directly between the facsimile recipient and the sender, but cites no authority for this proposition.

The Act does not define the phrase "prior express invitation or permission." In 1995, however, the Federal Communications Commission declined requests for a more precise definition of the phrase in its regulations and rejected a definition that included "publication or release of a facsimile telephone number" or "other action indicating a facsimile number for use in normal business communications." *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 10 F.C.C.R. 12,391, 12,408 (F.C.C. Aug. 7, 1995) (reconsideration order). The Federal Communications Commission stated:

> We do not believe that the intent of the [Telephone Consumer Protection Act] is to equate mere distribution or publication of a telephone facsimile number with prior express permission or invitation to receive such advertisements ... Similarly, publication of one's fax number would not constitute prior express permission or invitation absent the recipient's express consent to use of the telephone facsimile number for the purpose of receiving an advertisement.

*Id.*

Black's Law Dictionary defines "express" as "clearly and unmistakably communicated; directly stated." Black's Law Dictionary 601 (7th ed.1999). "Express consent" is defined as "consent that is

clearly and unmistakably stated." *Id.* at 300. An earlier ·edition of Black's Law Dictionary further clarifies the meaning of "express" in its discussion of its antonym, "implied," and states in relevant part:

> This word is used in law in contrast to "express"; i.e., where the intention in regard to the subject-matter is not manifested by explicit and direct words, but ·is gathered by implication or necessary deduction from the circumstances, the general language, or the conduct of the parties.·

Black's Law Dictionary 679 (5th ed.1979).

The defendant seems to believe that the plaintiff's agreement to release of its fax number to IATAN members necessarily implies consent to receive unsolicited advertisements from such members. But even if that were the case, the defendant ignores the fact that implicit consent is insufficient under the law. If the consent is not manifested by explicit and direct words, but rather is gathered only by implication or necessary deduction from the circumstances, the general language, or the conduct of the parties, it is not express consent. Rather, it is merely implied consent. And, without express consent, the law forbids the defendant from sending unsolicited facsimiles to the plaintiff.

We hold that IATAN membership did not constitute "prior express invitation or permission" under the Act for the defendant to send the plaintiff the 31 unsolicited facsimiles. The Federal Communications Commission's interpretation of the statute and the plain meaning of the word "express" cause us to conclude that IATAN membership did not constitute express consent, which the law mandates. The defendant has cited no authority to support its position that membership in an

---

complies with the requirements under paragraph (2)(E); ...

47 U.S.C.S. Sec. 227(b)(1) (Matthew Bender, LEXIS through Pub.L. No. 109–220).

industry group and inclusion in the group's directory constituted express consent. Point denied.

*Conclusion*

The 31 facsimiles at issue proclaimed the commercial availability of the defendant's services. The defendant did not have the plaintiff's prior express invitation or permission to send such facsimiles. Therefore, we hold that the facsimiles were "unsolicited advertisements" within the plain meaning of the Telephone Consumer Protection Act, and sending them constituted a violation of its provisions. Thus, the plaintiff established its right to judgment as a matter of law, and the trial court properly entered summary judgment in favor of the plaintiff. The judgment of the trial court is affirmed.

BOOKER T. SHAW, J., and PATRICIA L. COHEN, J., concur.